IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 1:99cr 15-MMP/AK

TERRY GLASSCOCK,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 831, Defendant Terry Glasscock's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, and Doc. 832, Statement of Facts and Memorandum in Support thereof.  The Government has filed its response, Doc. 851, and the time for filing a reply having expired without any additional filings from Defendant, this cause is now in a posture for decision.  Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

## BACKGROUND

The defendant, Terry Glasscock, was charged in a three-count superseding indictment with conspiracy to possess with intent to distribute and to distribute cocaine and with using and carrying a firearm during and in relation to a drug trafficking crime.  Doc. 92.  The superseding indictment also contained a criminal forfeiture count.  *Id*.  Also indicted were five other co-defendants.  *Id*.  The superseding indictment did not allege any drug quantity.  *Id*.  Defendant

was arraigned on April 29, 1999, at which time the Court set a $1,000,000 appearance bond, and trial was set for June 14, 1999. Docs. 105-109. Defendant retained Patrick J. Renn of Louisville, Kentucky, to represent him. Docs. 112 & 113.

On May 12, 1999, the co-defendant, Christopher Reed, pled guilty. Docs. 143 & 144. Terry Glasscock then made numerous pretrial motions, including a motion to dismiss for pretrial delay, Doc. 146; a motion to sever from co-defendants, Doc. 147; a motion for disclosure of informant identity, Doc. 148; a motion for *James* hearing, Doc. 150; a motion for bill of particulars, Doc. 152; and a motion for change of venue, Doc. 153. A few weeks later, the co-defendant, Walter Penick, pled guilty to Count I and and, after a bench trial, was found guilty on Count II. Docs. 180, 182, 202, & 241.

On May 27, 1999, the Court held a hearing on all pending motions, including those made by Terry Glasscock. At that time, the Court denied the motions to dismiss, for disclosure of informants, and for a *James* hearing. Doc. 200. As to the motion to sever, the Court found that Terry Glasscock should be severed from co-defendants Aaron Glasscock and Frank Merold, but that he could be tried with the other co-defendant, James Boswell. *Id*. The Court denied Terry Glasscock's motion for a bill of particulars to more fully reveal "the precise quantity of controlled substances that [were] involved in the total conspiracy, as well as the amount attributable to each defendant," finding that the indictment sufficiently informed Glasscock of the charges against him and allowed him to assert double jeopardy later. *Id*. Finally, the Court denied the motion to transfer venue to Kentucky, where Terry Glasscock lived, on the ground that several of the overt acts occurred in the Northern District of Florida and most of the witnesses were from Florida. *Id.*

Ten days before trial, Defendant filed a motion to suppress pursuant to *Franks v. Delaware*. Doc. 212. More specifically, Defendant claimed that all of the evidence seized as a result of a search conducted at his residence should be suppressed because of a false statement in the supporting affidavit. Doc. 213. Counsel only learned of the false statement when he attended the May 27 motion hearing. *Id*. On the first day of trial, the Court heard oral argument on the motion, and though the Government conceded the falsity of the supporting statement attributed to the co-defendant, Aaron Glasscock, the Court found that the statement "was not made knowingly, intentionally, or with reckless disregard for the truth." Doc. 232. Alternatively, the Court found that even without the statement, "there was enough to support probable cause for the search of Terry Glasscock's house...." *Id*.

At that time, counsel also "made several oral motions." Counsel first made an oral motion to sever Defendant from Boswell; however, the Court found "no *Bruton* problem with regard to the alleged statement by Boswell that he did not want to testify against 'family and friends' because the statement does not directly implicate Terry Glasscock." *Id*. The Court also noted the Government's agreement to redact "the reference by Boswell that the 'little boy's daddy was involved.'" *Id*. The Court rejected Defendant's "spillover" argument "that a severance was needed because evidence would be offered that Mr. Boswell had been involved in several transactions which did not involve Terry Glasscock," concluding that the "strong policy favoring joint trials outweighs any possible prejudice...and that the Court's instructions to the jury to evaluate the evidence against each defendant separately cures any potential spillover prejudice." *Id*.

Counsel next moved to suppress evidence of a drug dog alert. *Id*. In that regard, the Court denied the motion but directed "that the government must present evidence establishing the dog's training and reliability prior to attempting to admit the dog's apparent detection of cocaine residue." *Id*.

The case then proceeded to trial against Boswell and Terry Glasscock only. The jury convicted both defendants on all counts and returned a special verdict that Terry Glasscock had earned $440,000.00 "from his illegal drug activity during and in furtherance of the conspriracy set forth in the indictment." Docs. 235 & 237. Counsel for Terry Glasscock subsequently renewed his motion for judgment of acquittal on the basis that the

> evidence introduced at the Defendant's trial was such that no rational trier of fact could establish beyond a reasonable doubt that he was anything more than merely present at the scene of certain transactions or events and that he assembled together with others who may have been involved in a conspiracy. According to the Court's instructions to the jury, this simply is not enough to prove that he was a member of any charged conspiracy.

Doc. 249. The Court denied the motion without elaboration. Doc. 259.

On August 11, 1999, a jury found co-defendant Merold guilty on Count I and not guilty on Count II. Doc. 298. On September 17, 1999, the Court sentenced Terry Glasscock to 365 months on Count I and 60 months on Count II to run consecutively. Docs. 338 & 345. He then appealed. Doc. 350. After three mistrials, Docs. 283, 327, & 376, the co-defendant, Aaron Glasscock, was found guilty on Count I and not guilty on Count II. Doc. 483.

While Terry Glasscock's appeal was pending, he moved for remand to consider the applicability of *Apprendi*. Doc. 729. The Court denied the motion without elaboration. Doc. 731.

On January 17, 2002, the Eleventh Circuit affirmed without opinion. Doc. 813. The

instant § 2255 motion ensued.  On this occasion, Terry Glasscock, represented by counsel, alleges three grounds of ineffective assistance of counsel.  Doc. 831.  In the first ground, Terry Glasscock charges that counsel "failed to adequately prepare for trial."  *Id*.  In the second ground, he claims that counsel "failed to disclose a conflict of interest with the attorney for co-defendant James Boswell."  *Id*.  Finally, he argues that his Sixth Amendment rights were violated when his attorney "did not advise [him] regarding cooperation with the Government."  *Id*.

Each will be considered in turn.

## **DISCUSSION**

Because Defendant's claims involve allegations that his counsel was ineffective, a consideration of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate before the Court examines each claim individually.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.  The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice.  *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  The court must consider counsel's performance

in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable

conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

I. Failure to adequately prepare for trial.

In the first section of this claim, Defendant maintains that counsel was ineffective "when he did not seek a continuance of the trial date in order to be fully prepared." Doc. 832. As examples of counsel's alleged lack of preparation, Defendant points to (1) counsel's belief that the trial would be moved to Kentucky, (2) counsel's May 27 "notice of the importance the Government placed on Terry Glasscock's role in the conspiracy, and the problems Terry Glasscock would face when tried with Greg Boswell," and (3) counsel's failure to "spend adequate time with Terry Glasscock to establish a defense." *Id*.

None of these claims has merit. The fact that counsel sought a change of venue and made the best argument that he could in support of that request does not mean that he so truly

believed in its success that he would otherwise fail to prepare for an impending trial.  As counsel states in his unrefuted affidavit, "it was no great 'surprise'" that the Court denied the venue change and he "had more than sufficient time to meet with [his] client and to prepare his defense."  Doc. 851, Appendix D.  Furthermore, Defendant's suggestion that counsel did not know until the May 27 hearing on his outstanding motions of the importance the Government attached to Terry Glasscock's role in the conspiracy or of the spillover effect that being tried with Boswell might have is disingenuous and not supported by anything other than conjecture.  Counsel filed numerous motions on May 14, 1999, including a motion to sever, one month before trial.  Counsel had absolutely no control over the Court's scheduling of the hearing on those motions, but his prompt attention to all manner of issues shows belies any argument that he was not adequately preparing himself on a variety of contingencies.  When the Court denied the written motion to sever, counsel moved again to sever with particular focus on the inappropriateness of trying Terrry Glasscock with Boswell.  Being unsuccessful in convincing the Court that this course of trial would unduly prejudice his client is not indicative of being ineffective.  It is obvious that Counsel had considered and had prepared for this possibility, or he would not have been ready with the additional argument for severance.

      Finally, Defendant's argument that counsel failed to spend adequate time with Terry Glasscock "to establish a defense," Doc. 832, is, at best, vague, as it is insufficient for Defendant to tell the Court that he "had information which would have impacted on his defense" if he had just had more time to prepare and not to relate any specifics about that "information."  It is clear from counsel's June 9, 1999, hand-delivered letter to Terry Glasscock that he and Defendant had "conversations...over ...several weeks" in which they discussed the very damaging evidence and

witness testimony that the Government was prepared to present against Defendant, including

> the two gas tanks with hidden compartments that were seized from your property and similar to the one seized in Florida with the money; the "tally sheet" allegedly in Greg Boswell's handwriting found in your safe; the $30,000.00 cash seized from you safe; the alert by the narcotics dog on the seized money and plastic wrappers; your telephone records and hotel records.

Doc. 851, Appendix D-2. Defendant does not, even now, advise the Court of the names of any "substantive and character witnesses" which he provided to counsel for investigation and interview or how their testimony would have affected the outcome of the trial. *See Strickland*, 466 U.S. at 693-94. Argument without details is insufficient to carry the day.

Defendant next attacks counsel's failure to "timely raise the issue that the trial court was operating under a constitutionally flawed interpretation of the elements of the controlled substance statute." Doc. 832. In other words, counsel should have attacked the indictment on *Apprendi* grounds for its failure to charge drug quantity. This claim is equally without merit. Counsel did, in fact, seek that information via a bill of particulars to more fully reveal "the precise quantity of controlled substances that [were] involved in the total conspiracy, as well as the amount attributable to each defendant," which the Court denied on the ground that the indictment sufficiently informed Glasscock of the charges against him. Since *Apprendi* had not been decided at that time, the failure of an attorney to anticipate *Apprendi* is not ineffective assistance of counsel. *United States v. Ardley*, 272 F.3d 991, 993-94 (11th Cir. 2001).

II.  Failure to disclose a conflict of interest with Boswell's attorney.

In this claim, Defendant charges that his counsel was ineffective for failing to disclose a conflict of interest between himself and the law firm representing the co-defendant, Boswell, Smith & Helman.  According to Defendant, Mr. Renn shared office space and telephone services with Smith & Helman and was dependent upon the firm "for at least part of his practice."  In Defendant's view, Mr. Renn should have divulged "the details of his attorney's possible conflict of interest and the potential perils of such a conflict."  Doc. 832.

This claim is flatly belied by the record.  According to an unrefuted file memorandum submitted by Mr. Renn, he plainly discussed this matter with Defendant at their initial meeting:

> During the office visit, I discussed my background with Mr. Glasscock and advised him that I was on the same floor with the attorneys who would be representing Mr. Boswell....I advised him that despite being on the floor with the attorneys for Mr. Boswell...my loyalties would be [with] him and told him that in all likelihood at some point in time the U.S. Attorney would come to us with some offer...and that I would use my best skills and judgment to obtain the best offer for him.  I let him know that this may very well include the possibility of having to testify as a witness against Mr. Boswell.  Mr. Glasscock indicated that he appreciated my sincerity and that he would be interested in retaining me....

Doc. 851, Appendix D at D-1.

Defendant has not denied the contents of this memorandum, and in this Court's view, the record discloses that counsel sufficiently discussed the matter with Defendant, that he was on notice of counsel's office arrangements, and that he waived any conflict of interest in that regard by retaining Mr. Renn's services in light of his disclosure.  In short, Defendant cannot show "specific instances in the record that 'demonstrate that an actual conflict of interest adversely affected his lawyer's performance.'" *Caderno v. United States*, 256 F.3d 1213, 1218 (11th Cir. 2001) (quoting *Cuyler v. Sullivan*, 528 U.S. 1082 (1980)).

III.     Failure of counsel to advise Defendant regarding cooperation with Government.

In this claim, Defendant charges that counsel was ineffective because he failed to advise Defendant of the possibility of cooperation and because he made representations on Defendant's behalf without his understanding or approval of potential for cooperation.  Doc. 832.  Again, this allegation is not supported by the record evidence.  In the June 9 letter to Defendant, Mr. Renn wrote:

> Based upon the evidence against you...as well as the potential sentence you would face if you were to be convicted at trial and based upon the fact that I believe that if you proceed to trial it is far more likely than not that you would be convicted, I must advise you, as I have over the past several weeks, that you should permit me to work out an agreement with the prosecutor and for you to enter a plea of guilty.  As we have discussed, the policy of the U.S. Attorney's Office in Florida, as well as Judge Paul's policy, would require you to plead guilty as charged in the Indictment to <u>fully</u> cooperate.  Full cooperation would mean providing information about other persons who may have committed criminal offenses and answering all questions truthfully–no matter who or what is asked about.  If you enter into such an agreement and fully cooperate, the Government, in its discretion, could file a motion for a downward departure from the Guidelines and potential mandatory minimum sentence, asking the Judge to give you a lesser sentence than is provided under the current Federal Sentencing Guideline Requirements.  The decision on whether to give a reduction, should the Government file such a motion, would be entirely up to the Judge and his includes the amount of the reduction.
>
> \* \* \*
>
> As I have disclosed to you, based upon my inquiries and based upon the evidence in this case, I have been advised that...Judge [Paul] would likely sentence you in the range of ten to fifteen years.  There are, however, no guarantees.  If you would agree to plead guilty, at your sentencing I would be free to argue for the lowest possible sentence and would do so on your behalf.  In addition, at sentencing, we would be permitted to put on evidence of mitigation.
>
> During our past conversations, you have made it plain to me that you do not wish to plead guilty.  Please understand that by my advising you to plead guilty I am simply doing the job that you hired me to do–give you my best advice and to represent you to the best of my abilities.  Despite my advice to you to plead guilty, you are aware that this is a decision that you must make.  Please

> understand that if you choose to reject my advice and proceed to trial that I will respect your decision and will continue to represent you to the very best of my abilities. Please let me know if your decision to proceed to trial has changed and if so I will immediately contact the U.S. Attorney on your behalf.

Doc. 851, Appendix D at D-2. This meticulously crafted and unrefuted letter thoroughly counters the bald allegations that counsel did not discuss cooperation with Defendant, and thus, any claim that counsel was ineffective in this regard is meritless.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion to vacate, set aside, or correct sentence, Doc. 831, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this **7th** day of June, 2006.

s/ A. KORNBLUM
ALLAN KORNBLUM
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**